UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.               CASE NO. 8:12-cr-205-T-17MAP

NATHANIEL HARRIS, *et al.*
_____/

**ORDER**

In July 2014, promptly after the grand jury charged all the Defendants with committing capital crimes, the Court appointed a second counsel for each as required under 18 U.S.C. § 3005 (doc. 182). Days ago, the government formally noticed the Court that it would no longer seek the death penalty against any Defendant (doc. 599); as a result, the Defendants are no longer entitled to the procedural benefits afforded to defendants in capital cases. *United States v. Grimes*, 142 F.3d 1342, 1347 (11th Cir. 1998). Nonetheless, each Defendant moves the Court for an order allowing his learned counsel to remain on the case (docs. 607, 617, 621).[1] After consideration, each Defendant's motion is denied for the reasons stated below.[2]

A defendant charged with a capital crime is entitled, at his request, to the appointment of two counsel, one of whom "shall be learned in the law applicable to capital cases." 18 U.S.C. § 3005. This "reflects Congress's policy decision that defendants relying on appointed counsel need even more help – and more specialized help – when their life hangs

---

[1] The remaining Defendants join these motions.

[2] The district judge orally referred these matters to me for disposition. Local Rule 6.01(b).

in the balance." *United States v. Cordova*, 806 F.3d 1085, 1100 (D.C. Cir. 2015). But that statutory scheme does not guarantee that learned counsel will remain on the case if the government later informs all that it will not seek the death penalty. Indeed, the overwhelming majority of the circuits presented with this circumstance take the Eleventh Circuit's position in *Grimes* – that once the case ceases to be a capital case the defendant is no longer entitled to a second attorney. *United States v. Douglas*, 525 F.3d 225, 237 (2d Cir. 2008); *United States v. Casseus*, 282 F.3d 253, 256 (3d Cir. 2002); *United States v. Shepherd*, 576 F.2d 719, 727-29 (7th Cir. 1978) (same); *United States v. Weddell*, 567 F.2d 767, 770-71 (8th Cir. 1977) (given that death penalty was then considered unconstitutional, defendant not entitled to the appointment of second attorney); *United States v. Waggoner*, 339 F.3d 915, 917-18 (9th Cir. 2003); *Cordova*, *supra*.[3] The majority's reasoning is straightforward – "[i]f the death penalty is not on the table for a particular case, such expertise is no longer absolutely necessary for a fair proceeding to result." *Cordova*, 806 F.3d at 1100.

Although, as the Defendants point out, the Court is vested with the discretion to permit learned counsel to remain on the case, the policy is that "absent extenuating circumstances," "the court *should* make an appropriate reduction in the number of counsel" and "*should* reduce the compensation rate." *See Guide to Judiciary Policies* at Vol. 7A, Ch. 6, §§ 630.30.20(a), 630.30.30(a) (emphasis added). The *Guide* suggests courts consider the following factors when deciding if extenuating circumstances warrant keeping learned

---

[3] Only the Fourth Circuit takes a different view. *United States v. Boone*, 245 F.3d 352, 359-60 (4th Cir. 2001) (an indicted capital defendant entitled to two attorneys even if the government no longer seeks death).

counsel: (1) the need to avoid disruption of the proceedings; (2) whether the decision not to seek the death penalty occurred late in the litigation; (3) whether the case is unusually complex, and (4) any other factors that would interfere with the need to ensure effective representation of the defendant. *Id*. at § 630.30.20(b).[4] The Defendants urge that all the factors warrant keeping learned counsel, and they give a host of reasons. The case is too complex, too document-intensive, too lengthy, and too late in the day to remove members of the defense team.

This is a complex case, and it is likely to be lengthy (the government estimates six to eight weeks). All six Defendants are charged with at least one murder, and most are charged with multiple homicides against the backdrop of RICO and drug conspiracies. Added to this mix are drug distribution counts (street level amounts) and firearms violations. The government has furnished extensive amounts of Rule 16 material, enough so that the Court appointed a discovery attorney to manage, organize, and distribute the data to the defense counsel. Most of the discovery is document based – criminal reports authored by state investigators for the multiple homicides and assorted other crimes charged. A significant amount includes jail calls, videos, and images (altogether labeled "media files"). Other parts deal with forensic evidence. The latest batch covers investigative reports and items furnished under the umbrella of an agreed protective order (items too that might be considered Rule 26.2 material that the government has tendered early). At first blush, this looks overwhelming and appears to fit within the category of inordinately complex (thereby

---

[4] The *Guide* suggests different extenuating circumstances for deciding if the increased compensation rate for capital cases is warranted. *Id.* at § 630.30.30(b). None of the Defendants argue their counsel should be compensated at this increased rate.

meeting the *Guide*'s exception). But the reality is different than the appearance.

Almost a year ago, the Court required the government to segregate the media files and identify for the defense counsel those that the government deemed relevant (doc. 326, Order dated May 22, 2015). The government reports it anticipates presenting no more than 30 media files and using less than 20 transcripts for aids. As for forensic evidence, it is doubtful that the parties will dispute how a homicide victim died; instead, that type of evidence will attempt to tie a particular Defendant to a particular homicide. But the government candidly admits that its forensic evidence on that score is limited. Instead, the bulk of the government's case is based on the anticipated testimony of cooperating witnesses. Defense counsel essentially recognize this but contend that the temporal breadth of the conspiracies (about eight years), the number of charged crimes (particularly murders), and the number of witnesses to be cross-examined make defending the case too unwieldy for one lawyer. Two lawyers to a Defendant are still needed even if death is not on the table. Yet, when considered more closely, the conspiracies, aside from the violence alleged, are not different than many drug conspiracies prosecuted in this division. And while the length of the conspiracies spans years (not an uncommon feature in drug distribution conspiracies), the critical events are alleged to have occurred from 2010 through 2013. In contrast, this is not a fraud case in which the events of a business must be tracked on a daily basis for years. Perhaps their most pressing concern is the amount of witness preparation needed for trial. As for that, the Defendants have had the benefit of early disclosures – a consequence that might not have occurred had death never been on the table.

The government's decision not to seek the death penalty comes roughly three months

before the scheduled trial, a decision defense counsel claim is late enough to have affected their trial preparation. I do not find that argument particularly persuasive. All the Defendants were appointed counsel in June 2014.[5] Learned counsel entered the case soon thereafter. In May of last year, the district judge set the June 6, 2016, trial date (doc. 322). Since then, at various status hearings, the Court has advised counsel that lead counsel should be prepared to proceed in the event the government did not seek death for one or more or all of the Defendants (*i.e.*, the presumption is that learned counsel will be removed if the death penalty is no longer at stake). That the government's announcement came roughly three months before the scheduled trial date should not have come as a distinct surprise to defense counsel given that the Department of Justice showed no apparent interest in scheduling the defenses' presentations for arguing against the death penalty.[6] In sum, the Defendants have prepared for the upcoming trial date in any event.

Counsel contend that they have divided labor amongst themselves and that to split a team now will disrupt a Defendant's preparation for trial. The more appropriate inquiry, however, is whether a Defendant's primary counsel will have sufficient time and resources to mount a constitutionally effective defense. All the Defendants have been provided with paralegals, investigators, and other experts as needed for an adequate representation. 18

---

[5] The grand jury returned the second superseding indictment in late May 2014 charging all the Defendants with capital crimes. Nathaniel Harris had been arrested more than a year before on drug and firearm violations. His counsel has remained on the case since Harris's initial appearance to answer to that first superseding indictment.

[6] *See* United States Attorneys Manual at § 9-10.130 ("No final decision to seek the death penalty shall be made if defense counsel has not been afforded an opportunity to present evidence and argument in mitigation.").

U.S.C. § 3006A(e). I am confident that lead counsel for a Defendant, with the assistance of his or her defense team, will provide his or her respective Defendant constitutionally effective representation. As for any disruption caused by the removal of learned counsel, I find that allowing some additional time for learned counsel to transition off the case will ameliorate that disruption. Accordingly, it is hereby

ORDERED:

1. Effective April 15, 2016, learned counsel for each Defendant is removed as counsel for that Defendant.

2. All defense counsel will be paid at the capital offense rate through March 31, 2016; after that date, counsel will be paid at the regular CJA rate. In any event, counsel are to submit their vouchers using the CJA 30 form.

3. Defense budgets for expenses that would be compensated using CJA 31 vouchers are to be filed with Clerk *ex parte* and under seal in the format discussed at today's hearing.

4. The Clerk is directed to accept the Defendants' submissions (as outlined in the above paragraph) and place those submissions under seal without further Order of the Court.

DONE AND ORDERED in Tampa, Florida on March 16, 2016.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE