UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                                 Case No. 8:12-CR-205-T-17MAP

NATHANIEL HARRIS, *et al.*
_____/

This matter is before the Court on an oral referral by the district judge for a report and recommendation dealing with a self-reported violation of the Court's Protective Order (doc. 454). *See* Local Rule 6.01(b). Both the government and Defendant Charlie Green's counsel, who immediately reported the disclosure to the government, have suggested different remedies (docs. 891, 892, 893). The remaining Defendants mainly agree with Defendant Charlie Green's proposals with caveats. After two hearings on the matter, I find the disclosure was inadvertent; nonetheless, I find the government's concerns about the disclosure real and legitimate.

    *A. Background*

The government's motion (doc. 893) accurately reports what occurred yesterday during the jury-selection phase of the trial – Defendant Charlie Green's counsel reported via an email to government counsel a violation of the Court's Protective Order dealing with a particular witness's report of investigation (ROI), a document that under the agreement was to be limited to counsel's eyes only (and those of the defense team). This document should not have been disclosed to any Defendant until seven days before the government called the witness. The government promptly reported the matter to the Court. And the Court, pending further inquiry regarding the incident, directed the United States Marshal to place the Defendants in a lock down status.

After two hearings on the matter, I cannot discern how the disclosure occurred other than it did. Likewise, I cannot discern if, before the reported disclosure, any Defendant other than Charlie Green had access to the disclosed ROI. Despite this fog of who saw what and when, it is obvious that by the end of the day, the Defendants likely discussed among themselves the particular information that defense counsel reported and that the Protective Order covered. Importantly, the government does not contend that any defense attorney nor his or her agent purposely disclosed the ROI. In short, the disclosure was inadvertent. Irrespective, the risks posed by the disclosure to the affected witness are real, and the government's interests in protecting the witness are legitimate.

This case's central feature is violence – a RICO conspiracy involving controlled substance offenses, firearm violations, and nine murders that occurred in a small geographic section of Bradenton where everyone knows everyone. The government says it will present evidence that the Defendants and others engaged in turf battles where contract killings and revenge killings were central to the enterprise. As for Defendant Charlie Green, the government implicates him in seven of the nine murders. And as to the affected witness, whom the government says is a key witness, the government asserts the Defendant Charlie Green had before the disclosure attempted to persuade that witness to provide a false alibi. Consequently, the threat to the safety and the integrity of potential witnesses, and specifically the affected witness, is real.

And these concerns have not diminished because the Defendants are in custody. All the Defendants' jail calls are monitored and the extent of the monitoring has been a recurring topic of the discovery management of the case. The government has proffered that the Defendants,

who are each assigned a PIN to make calls, have procured PINs assigned to other detainees who are not associated with the case. Using these alternative PINs, the Defendants have made calls that are not immediately noticeable to the jailers. This conduct violates the rules regarding phone privileges. In the end, it appears that no Defendant who makes a call has been monitored in real time. Instead, calls are stored and reviewed according to the reviewer's protocol.

### 1. the government's proposals

Importantly, the government is not advocating any sanctions as punishment. Instead, the government's aim is remedial. Accordingly, it proposes that the Court issue an Order that directs the following: (1) the Defendants are to be held in administrative lock down during the duration of the trial without contact with other inmates; (2) the Defendants are to be permitted to make phone calls to potential witnesses but only in the presence of some member of the defense team (otherwise a Defendant is to have no telephone calls); (3) the Defendants are to have no visitors during the duration of the trial; (4) all protected material (as defined in the Protective Order) is to be removed from the courtroom until the applicable seven-day period is triggered (as the Protective Order dictates).[1]

### 2. Defense Counsel's proposals

Defendant Charlie Green's counsel offers alternatives: (1) the Court admonish counsel that the terms of the Protective Order remain in full force and effect; and (2) defense counsel are hereby strictly prohibited from possessing any protected information, in any form, in the

---

[1] The government is not suggesting that the Court impose any restriction on a Defendant's ability to confer with his attorney. *See Geders v. United States*, 425 U.S. 80, 91 (1976) (holding that an order preventing defendant from consulting with his counsel during overnight recess between his direct and cross-examination impinged upon his right to the assistance of counsel guaranteed under the Sixth Amendment).

courtroom; and (3) the Defendants are strictly prohibited from exchanging any written materials directly with each other in the courtroom and can only exchange such materials through their respective counsel.

All the Defendants object to any administrative detention, the limiting of calls, and the limiting of visitors. And one defense counsel (Louderback) maintains that it is impossible to enforce any directive that requires removing protected material from the courtroom because the digital media format does not readily allow for such a prohibition. For example, a search for non-protected material, or search about a non-protected witness, could also pull up from the digital archive a protected document. Although that protected document would reveal a protective watermark, that page would be momentarily visible to anyone within view of the computer screen.

*B. Discussion*

It goes without saying that the United States Marshal or his contracting jailer has a legitimate interest in managing the facilities where the Defendants are detained. Jail authorities must be able to maintain security and order, and that includes monitoring the Defendants while in the detention facility. *Bell v. Wolfish*, 441 U.S. 520, 540 (1979). Jail calls are routinely monitored, limited, and prescribed. *See i.e.*, Fla. Admin. Code at § 33-602.205 (telephone use). Thus, jailers are independently able to discipline and enforce their rules for maintaining security and order. In other words, the jailer, not the Court, is the enforcer of the jail's rules.

In contrast, the remedies occasioned by the Protective Order violation are managerial in nature – to determine if the Defendants' conditions of confinement should be restricted for legitimate, non-punitive reasons. *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048-49 (9th Cir. 2002)

(restricting phone access); *Higgs v. Carver,* 286 F.3d 437, 438 (7th Cir. 2002) (standard for evaluating need for administrative detention). I find, as I have already stated, the government has legitimate concerns about the safety of its witnesses, and particularly its witnesses whose sensitivities are covered by the Protective Order. I also find that to enforce the Protective Order and to ensure the safety of witnesses, particularly the affected witness, restrictions on the Defendants' ability to communicate with others, aside from their respective legal teams, are warranted.

*C. Recommendations*

For the reasons stated, I recommend:

1. The Defendants' lockdown (which has been in place since this issue came to light) be lifted be lifted to the extent outlined in this Report.

2. The Court admonish counsel that the Protective Order remains in full force and effect. To ensure compliance with the Protective Order, defense counsel and the government should be directed to promptly identify those protected reports of investigation (and their digital identifiers) that are the subject of Protective Order and particularly the seven-day disclosure subset.

3. The Court should admonish the Defendants that they are strictly prohibited from exchanging any written materials with each other in the courtroom and the Court should direct the Marshal to monitor such behavior.

4. Defense counsel should be directed to clearly mark and identify any hard copy of a protected document, should segregate that document in a clearly identifiable folder or binder, and must keep that folder or binder from a Defendant until the Protective Order allows its disclosure.

5. Because access to the digital media does not allow such an easy fix, defense counsel

should be admonished to abide by the Protective Order and to screen digital documents before disclosure to a Defendant to ensure that the document so disclosed is not covered by the Protective Order.

6. No Defendant should have any contact (either direct or indirect) with an alleged victim of a crime or with a potential witness who may testify concerning the case. Any contact with a witness or victim is to be made through defense counsel or a member of the Defendant's legal team. The Defendants are specifically advised that intimidating witnesses, jurors, and officers of the court, or obstructing justice, or tampering with a witness, victim, or informant, or retaliating against a witness, victim, or informant are all violations of federal law subject to fine and imprisonment or both.

7. Each Defendant is to provide the United States Marshal within five days a list of five individuals he wishes to call from the jail or see at the jail (excluding defense counsel and members of the defense team). Each list is to be screened by the government. If the government objects to a particular individual, it should submit its reasons to the Court as appropriate; otherwise, that list should be forwarded to the jail authority for compliance through the Marshals Service. Until a Defendant's contact is authorized, that Defendant is prohibited from calling or seeing that contact. If the government contends that these restrictive conditions (or any other restrictive conditions) will not ensure the Defendant's compliance, the government may renew its motion for holding that Defendant in administrative segregation (or lockdown) for the duration of the trial or for such limited time as to satisfy the legitimate need the government puts forth. In making such a motion, the government is to proffer the testimony of the relevant jail authority or

deputy United States Marshal with information regarding the futility of restrictions.[2]

8. A Defendant's jail calls to an approved individual or his jail visit with an approved individual is to occur in accordance with the rules and policies of the jail.

9. Any Order the Court issues should not be viewed by jail authorities as limiting their authority to impose suitable restrictions on any Defendant for either a violation of custodial rules and policies or for a legitimate custodial reason.

IT IS SO REPORTED in Tampa, Florida on June 14, 2016.

*[signature]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within two days (or as otherwise directed by the district judge) from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal. 28 U.S.C. § 636(b)(1).

---

[2] *See United States v. Villegas*, No. 2:13-cr-00355-GMN-CWH, 2015 WL 3649606 (D. Nev. June 11, 2015).