UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                                          Case No. 8:12-CR-205-T-17MAP

NATHANIEL HARRIS, *et al.*

_____/

**REPORT AND RECOMMENDATION**

The District Judge referred two related motions to me for a report and recommendation: Defendant Nathaniel Harris's motion to amend privileges (doc. 926) and Defendant Charlie Green's motion for reconsideration (doc. 938). Local Rule 6.01(b).[1] Both seek varying relief from the District Judge's Orders (doc. 898, 917) adopting my report (doc. 896) recommending that the District Judge impose certain remedial measures designed to deal with the consequences of a violation of the protective order and to protect witnesses, particularly in view of the violent behavior the Defendants are alleged to have committed (docs. 454, 891, 892, 893). The government opposes the changes Defendant Charlie Green advances, but it does not object to an alternative Defendant Nathaniel Harris offers (doc. 954).[2] After hearings on the matter, I recommend that the Court's Order (doc. 898, June 14, 2016) be modified to the extent that the Defendants be permitted to make phone calls in the presence of their respective investigators under the conditions the jailing

---

[1] The remaining Defendants adopt these motions. Defendant Martin filed a separate motion (doc. 961) adopting Defendant Charlie Green's motion. Martin's motion adds other complaints: the jailer's use of "security box handcuffs," limitations placed on recreational time, and diet complaints. Martin's food complaints are without merit and require no discussion. The government does not take a position on the Sheriff's security protocols, leaving that to his discretion.

[2] The government initially opposed Nathaniel Harris's motion in all respects (doc. 935). At the hearing, however, the government changed its position on the one alternative I find acceptable, in keeping with the remedial goals of the District Judge's June 14 Order.

authorities deem appropriate. In all other respects, the motions should be denied.

    *A. Complaints about the June 14, 2016, Order*

The reasons for the remedial measures are detailed in my Report and Recommendation (doc. 896) dated June 14, 2016. Two provisions of the Order adopting that Report are at issue here. The first concerns the Order's first paragraph: "The Defendants' lockdown (which has been in place since this issue has come to light) be lifted to the extent outlined in this Report." The second concerns the seventh paragraph:

> 7. Each Defendant is to provide the United States Marshal within five days a list of five individuals he wishes to call from the jail or see at the jail (excluding defense counsel and members of the defense team). Each list is to be screened by the government. If the government objects to a particular individual, it should submit its reasons to the Court as appropriate; otherwise, that list should be forwarded to the jail authority for compliance through the Marshals Service. Until a Defendant's contact is authorized, that Defendant is prohibited from calling or seeing that contact. If the government contends that these restrictive conditions (or any other restrictive conditions) will not ensure the Defendant's compliance, the government may renew its motion for holding that Defendant in administrative segregation (or lockdown) for the duration of the trial or for such limited time as to satisfy the legitimate need the government puts forth. In making such a motion, the government is to proffer the testimony of the relevant jail authority or deputy United States Marshal with information regarding the futility of restrictions.

The Defendants complain they remain in lockdown, segregated from the general population, a circumstance they say violates paragraph one of the Court's Order. Their reference to that paragraph, however, omits reference to the other part of the paragraph: the lockdown existing before the June 14 Order is "lifted to the extent outlined in this Report."[3]

---

[3] When the Court learned of the violation of the Protective Order, the Court orally instructed the marshals to place the Defendants in lockdown. This served two remedial purposes: to provide the government an immediate remedy to protect the disclosed witness and to limit the disclosure of the protected information beyond those already privy to that information. The Court's June 14 Order, issued after uncovering more detail about the disclosure, rescinded that oral order "to the extent outlined in this Report" (paragraph one).

*B. Discussion*

The Defendants are detained at two Hillsborough County facilities: Orient Road and Falkenburg Road. Both house detainees in pods with each pod having a common area accessible to the detainees in that pod. Phones are available in the pods, and each detainee is assigned a PIN number for making calls. While all jail calls are monitored, none of the calls are monitored in real time. Instead, jail calls are stored and reviewed later according to the Sheriff's monitoring protocol. A detainee's PIN number serves to identify the caller for the monitor (aside from its use as a charging device for the cost of the call).

As memorialized in the June 14 Order, the Defendants procured the PINs of other detainees and made calls to hide their identities from the monitors. The Order aimed to remedy the discovery violation, eliminate this conduct, and protect certain witnesses the Protective Order covered. The Sheriff, according to the marshal, cannot implement the Order's call restrictions and also keep the Defendants in general population. Mixing the Defendants within a pod's general population makes monitoring their access to other detainee's PINs impossible. This is hardly revelatory. In a jail, PINs, like commissary privileges, are trading commodities. Trading is likely commonplace within both facilities, which explains the Defendants' ease in appropriating the PINs of other detainees.[4] As a result, the Sheriff, to effectuate the goals of the Order, has segregated each Defendant from the general detainee population.

Even with the June 14 Order's limitations, Defendant Charlie Green, according to the

---

[4] All the Defendants have been in pretrial custody since their initial appearances in mid-2014. From the outset of the discovery phase through the present, the government has furnished defense counsel rolling Rule 16 disclosures of the Defendants' jail calls. The Defendants knowingly speak at their own risk. Still, there is little doubt that the Defendants have engaged in behavior designed to evade monitoring (even if that effort has proved unsuccessful for some).

government, has managed to make unauthorized calls. The government reports that two weeks after the Court issued its Order Defendant Green called a woman believed to be associated with the protected witness (leaked in through the inadvertent discovery disclosure) and appeared to coach the woman about alibi testimony. Green, calling the same number, spoke to a male not on the approved list, and Green later spoke to a female not on the list. In all these conversations, Green spoke about the protected witness that was the subject of the inadvertently disclosed document (doc. 954 at ¶¶ 13-17). And at today's hearing, the government reported that Green used the PIN of another inmate a few days ago. Green denies he used another detainee's PIN, but does acknowledge he spoke to someone outside the list who happened to be with the approved person he called. And, he somewhat acknowledges referencing the protected witness in a conversation if only to explain his current lockdown status.

Given these circumstances, the remedial aspects of the June 14 Order should remain in effect, even if that requires that the Defendants remain in segregation or lockdown so that the Sheriff can implement the Court's Order. None of the Defendants' complaints about the call restrictions warrants reconsideration of the Order, particularly considering Defendant Green's conduct since the implementation of the Order. *See Pope v. Hightower*, 101 F.3d 1382, 1385 (11th Cir. 1996) (finding that rational restriction of inmate's telephone use did not violate inmate's First Amendment rights when balanced against legitimate governmental justification for restriction – reduction of criminal activity and harassment); *United States v. Soto*, 885 F.2d 354, 363-64 (7th Cir. 1989) (isolating defendant from others before trial and restricting his contact only to his counsel did not violate the defendant's Fifth, Sixth, or Eighth Amendment guarantees); *United States v. Flores*, 214 F.Supp. 2d 1193, 1196-98 (D. Utah 2002) (defendant's security restrictions, including his telephone usage

and limits placed on visitations, were legitimately related to compelling governmental interests – preventing communications to obstruct justice and to harm witnesses).

The constitutionality of whatever restrictions are placed on a pretrial detainee, at least as those restrictions implicate the deprivation of liberty without due process of law, depends on whether those conditions amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To the extent the Defendants all complain that the Sheriff's security precautions – leg irons, box handcuffs, limited recreation time – are punitive, and therefore in contravention of their due process guarantees, their arguments are not persuasive, at least from the record presented to me.

> Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].' Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.

*Id.* at 538-39 (internal citations omitted). The Defendants' administrative segregation is remedial and not punitive. Likewise, the Defendants have not shown that the Sheriff's security precautions are punitive or amount to mistreatment in violation of the due process clause.[5]

*C. Conclusion*

For the reasons stated here and in the June 14 Order, I hereby RECOMMEND:

---

[5] Claims involving mistreatment of pretrial detainees are governed by the due process clause as opposed to the Eight Amendment's cruel and unusual punishment clause. However, the standards for both are the same. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).

  1. Defendant Charlie Green's motion for reconsideration (doc. 938) be DENIED.

  2. Defendant Nathaniel Harris's motion to amend the privileges (doc. 926) should be GRANTED to the extent he and the other Defendants should be allowed to make telephone calls in the presence of their respective investigators or defense counsel under the conditions and circumstances the jail custodians deem appropriate to the jail's legitimate penological needs.[6] The calls made in the presence of defense counsel or the investigator are not limited to their respective Defendant's call list. In all other respects the motion should be DENIED.

  3. The June 14, 2016, Order does not limit a Defendant's access to his defense counsel or a member of his defense team. Defense counsel and their agents are to have access to their assigned Defendant in keeping with the ordinary limitations (if any) the facility imposes on jail visits for such legal visits.

  4. The intent of the June 14, 2016, Order is to enforce the Protective Order and to remedy the effects of the disclosure of information covered by the Protective Order.

  5. Any Order the Court issues should not be viewed by jail authorities as limiting their authority to impose suitable restrictions on any Defendant to enforce a custodial rule or policy or to further some legitimate custodial reason.

  6. The United States Marshal should be directed to inquire of the Sheriff (or the Sheriff's designated agent) to determine if the Sheriff's reasons for shackling, restraining, or restricting the movement of any Defendant are in keeping with the facility's usual policies and practices for pretrial

---

[6] The government does not oppose this modification of the June 14 Order. I note that my recommendation to allow a Defendant to make calls in the presence of an investigator or defense counsel should not be read as a recommendation to alter any obligation that the Protective Order (doc. 917) imposes upon the defense team. The Protective Order remains in effect without any modification.

detainees presenting similar security profiles, or in keeping with the legitimate custodial needs as to that Defendant.  The United States Marshal should report to the Court accordingly.[7]

IT IS SO REPORTED at Tampa, Florida on July 13, 2016.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within two days (or as otherwise directed by the district judge) from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal.  28 U.S.C. § 636(b)(1).

---

[7] This inquiry stems from *Bell*'s admonition: "Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility."  *Id., supra*; *see also Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (Courts should give "wide-ranging deference" to the decisions of jail administrators that are needed to preserve internal order and discipline).