**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

v.                                                                                        Case No. 8:12-cr-205-T-17MAP

**NATHANIEL HARRIS**, *et al.*
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE is before the undersigned on referral for a report and recommendation on Defendant Napoleon Harris's **Amended Motion to Suppress Evidence Resulting From Use of Cell Site Simulator** (Doc. 980) and the government's response in opposition (Doc. 990). Defendant Deonte Jamal Martin adopted Napoleon Harris's motion (Doc. 991), and Defendant Jerry W. Green, Jr., adopted and supplemented Napoleon Harris's motion (Doc. 992). A hearing was conducted on July 21, 2016.[1]

**I.**

**A.**

By his motion, Napoleon Harris seeks to suppress evidence related to realtime location information that the Government obtained with a cell site simulator, also known as a "Stingray"

---

[1] Following the hearing, the Government submitted an additional response claiming that Napoleon Harris's motion to suppress is moot "because the United States does not intend to introduce any real time precise location cellular telephone evidence with respect to the murder of Carlos Jurado. The United States intends to present historical cell tower sector data regarding that murder." (Doc. 1010).
  Napoleon Harris filed a Second Motion to Suppress, adopting his previous argument and asserting, "To the extent the Government intends to introduce evidence that it characterizes as 'historical cell tower sector data' the issue is not moot because those records are only 'historical' as a result of the constitutional violation that occurred when agents accessed the Sprint L-site and archived the precise geographic information." (Doc. 1012).

device.[2] (Doc. 980). In short, Harris argues that the use of such devices is a search and requires a search warrant issued upon probable cause. Rather than seeking a search warrant to use such a device, Manatee County law enforcement officers filed applications for pen registers and trap and trace devices ("pen/trap applications") that merely certified "the information sought [was] relevant and material to an ongoing criminal investigation." (Docs. 980-1, 980-3, 980-5).[3] Among other contentions, Harris argues that because there were no warrants authorizing a search of the three cellular phones directed toward tracking him, the Government's use of the Stingray violated his Fourth Amendment rights, and he seeks an order of the Court suppressing any evidence illegally obtained as a result of the Stingray's use.

Defendant Martin has adopted Harris's motion as it relates to a pen/trap application and order for cellular phone number 941-405-2330 first attributed to Napoleon Harris and later to Deonte Martin,[4] and seeks to suppress all evidence derived from the initial warrantless search. (Doc. 991).

Defendant Jerry Green has also adopted Harris's motion. He claims that two May 2013 pen/trap applications and orders for two cellular phone numbers linked to him allowed the government to gather contemporaneous information regarding his precise geographic location

---

[2] These devices simulate cell towers by emitting signals that induce cellular devices in the area to transmit information back to the Stingray. *See* Department of Justice Policy Guidance: Use of Cell-Site Simulator Activity, https://www.justice.gov/opa/file/767321/download (last accessed July 25, 2016). Such devices can ascertain realtime locations of a cell phone user. *Id.*

[3] Napoleon Harris submits three pen/trap applications relating to three phone numbers: 941-405-2330 (Doc. 980-1); 941-545-8003 (Doc. 980-3); and 941-448-4152 (Doc. 980-5).

[4] Deonte Martin does not attach a copy of the application or order he cites, but asserts that such are dated July 12, 2013, and July 15, 2013, respectively.

through the use of a cell-site simulator.[6] Such warrantless searches, he argues, violate the Fourth Amendment, and no exception to the warrant requirement applies. (Doc. 992).

The Government opposes the motion(s) to suppress, arguing that it is untimely.[7] Moreover, it claims the motions are factually inaccurate in that law enforcement officers did not use a cell site simulator or Stingray during this investigation, but rather properly obtained court authorization to track the cellular telephones at issue using the properties of the provider's network. In addition, the Government argues that Defendants lack standing because none of them were subscribers to the cell phones and there is no evidence that they possessed or owned the cell phones. (Doc. 990).

**B.**

On July 21, 2016, the Court heard argument of counsel and took testimony from Detective Joseph Petta, the co-affiant on each of the applications at issue. In short, Detective Petta testified that law enforcement obtained pen/trap authorizations for the cell phone numbers at issue in order to obtain precise realtime location information that was used to track the whereabouts of these phones, to identify those associated with Defendants, and to identify locations of interests. He denies use of a Stingray or similar device, but acknowledges that he used a website offered to law enforcement by Sprint (the "L-site") to obtain such information. Such realtime information was available every fifteen minutes twenty-four hours a day. He further acknowledges that law enforcement used the realtime information to track the cellular phones, which they believed were used by this group. By his account, such applications were the usual way to obtain such realtime

---

[6]Jerry Green submits two pen/trap applications for cellular numbers 941-840-9395 (Doc. 992-2 at 6-14) and 941-405-2828 (Doc. 992-3 at 6-14).

[7]The deadline for filing pretrial motions was February 11, 2016. (Doc. 451).

location information at the time these applications were submitted.

None of the Defendants testified at the hearing.

## II.

### A.

Two of the Government's arguments – those relating to timeliness of the motion and the factual inaccuracy that a Stingray device was used to acquire realtime location information – are easily disposed of.

First, with regard to the timeliness issue, the Government ultimately waived this argument as it appears defense counsel may not have received discovery or notice about these matters until after the motion deadline. While the Government urged that this information was disclosed prior to the cutoff date, it acknowledged that discovery was made on a rolling basis and it had no proof as to when the applications and orders at issue here were first provided.

Second, although the motions incorrectly assumed a Stingray or similar device was used to collect the realtime location information, defense counsel argue that the motion remains viable because law enforcement used Sprint's L-site to obtain the same information without obtaining a search warrant based upon probable cause. According to Detective Petta, the website allows law enforcement to log on and obtain realtime or contemporaneous and highly precise longitudinal and latitudinal information linked to GoogleMaps. A spreadsheet of all such location data is made available to law enforcement. Detective Petta testified that the pen/trap orders were not used for any other purpose than to obtain the realtime location of the cell phones. By my consideration, the use of the L-site to monitor the realtime location of the cell phones in the absence of a search warrant raises the same Fourth Amendment issues as a Stingray device and merits consideration.

**B.**

On the matter of standing, the Government argues that none of the Defendants has standing to challenge the use of realtime tracking because none asserts a possessory interest in the subject phones and none claims to be a subscriber to the phones. In fact, it asserts the subscribers used fictitious identifiers. Moreover, they claim the phones appear to have been shared by and passed around among numerous people. Thus, the Government argues the Defendants cannot establish a subjective or objective expectation of privacy.

At hearing, Defendants argued that their standing to dispute the warrantless searches derives from the Government's assertions that the phones were possessed and used by them. They claim that the statements indicating their connection to the phones as contained in the pen/trap applications submitted to the judges in Manatee County provide sufficient nexus for Defendants to establish their standing.

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Supreme Court has established a reasonable-expectation-of-privacy test to analyze whether a "search" occurred for purposes of the Fourth Amendment. *See Smith v. Maryland,* 442 U.S. 735, 739-40 (1979) (citing *Katz v. United States,* 389 U.S. 347 (1967)). This test involves "a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable? Thus, a party alleging an unconstitutional search under the Fourth Amendment must establish *both* a subjective *and* an objective expectation of privacy to succeed." *United States v. Davis*, 785 F.3d 498, 507 (11th Cir.), cert. denied, 136 S. Ct. 479 (2015) (internal citations and quotations omitted).

Here, I agree with the Defendants that law enforcement's seizure of precise realtime location information by surreptitiously monitoring signals from the cell phones in this manner is a search subject to the proscriptions of the Fourth Amendment. Such is the express conclusion of the Florida Supreme Court and the conclusion suggested by the Supreme Court. *See Tracey v. Florida*, 152 So. 3d 504 (Fla. 2014); *United States v. Jones*, 132 S.Ct. 945 (2012).[8] As such, law enforcement should have obtained a search warrant issued upon probable cause. The Government concedes that the practice in this Court requires a warrant based upon probable cause for such searches and that the these pen/trap applications did not establish probable cause. Nonetheless, I conclude that the instant motion to suppress fails because the respective Defendants fail to establish their standing to challenge any Fourth Amendment violations.

A defendant has "standing" to challenge a warrantless search if the defendant had a "legitimate expectation of privacy" in the property when it was searched. *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978). Such requires both a subjective expectation and an objectively reasonable

---

[8]*Tracey* (decided after the applications and orders at issue here) expressly addressed the realtime monitoring of cell site location information and held that the use of Tracey's cell site location information emanating from his cell phone in order to track him in real time was a search within the purview of the Fourth Amendment. In the absence of a warrant based on probable cause, the evidence obtained as a result of the search was subject to suppression. *Tracey,* 152 So. 3d at 525-26.

*Jones* (decided prior to the applications and orders here) held that attaching a GPS tracking device on a target vehicle and its use to monitor the vehicle's movements was a search within the meaning of the Fourth Amendment. 132 S.Ct. at 949. In her concurring opinion, Justice Sotomayor addressed such surveillance in broader terms and noted generally that even short-term "GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations." *Id.* at 955. She expressed her agreement with Justice Alito that "longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy." *Id.* While the case did not involve realtime monitoring of cell phones, it suggests the conclusion that such activity is equally a "search" when used to track one's cell phone.

expectation of privacy in the area or effect searched. Under this standard, the defendant bears the burden of proving "not only that the search was illegal but also that he had a legitimate expectation of privacy in the area searched. *Rawlings v. Kentucky,* 448 U.S. 98 (1980) (citing *Rakas*). The subjective component requires that a defendant demonstrate an actual expectation of privacy in the area or matter searched, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *Smith,* 442 U.S. at 740-41.

An individual's standing to challenge a government intrusion or search is assessed by the totality of the circumstances and on a case-by-case basis. "While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, property rights are neither the beginning nor the end of ... [the] inquiry." *United States v. Salvucci,* 448 U.S. 83, 92 (1980) (citation omitted). "Other factors to be weighed include whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises." *United States v. Pitt,* 717 F.2d 1334, 1337 (11th Cir. 1983) (quoting *United States v. Haydel,* 649 F.2d 1152, 1154-55 (5th Cir. Unit A, Jul. 8, 1981).

Because Fourth Amendment rights are personal, "only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search." *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2004) (citing *Rakas* at 133-34). Thus, the court's initial inquiry focuses on whether the defendant has established a reasonable expectation of

privacy in the area or matter searched. The motion to suppress must be "sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is asserted. A court need not act upon general and conclusory assertions...." *Id.* (quoting *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985)).

Here, Defendants point only to the detectives' assertions in the pen/trap applications suggesting the Defendants' association with the cell phones at issue. However, courts examining this argument have determined that this is inadequate to establish standing. For example, the Northern District of Georgia determined that a defendant:

> may not "rely[ ] solely on the government's theory of the case [to show] that [he] has standing to contest [a] search." *United States v. Singleton,* 987 F.2d 1444, 1449 (9th Cir. 1993); *see also United States v. Thompson,* 171 F. App'x 823, 838 (11th Cir. 2006) (per curiam) (unpublished)*; United States v. Lewis,* Criminal No. 07-00266-CG, 2007 WL 2996347, at *1 (S.D. Ala. Oct.12, 2007). Accordingly, neither law enforcement's belief that [defendant] was the one who owned the phones, nor their knowledge and belief that he had the phones in his possession can serve as the "other evidence" necessary to establish [defendant's] standing to assert a Fourth Amendment challenge to the pinging of phone not registered under his name. *See Singleton*, 987 F.2d at 1449; *Thompson*, 171 F. App'x at 828; *Suarez-Blanca,* 2008 WL 4200156, at *5; *Lewis,* 2007 WL 2996347, at *1.

*United States v. Dooley*, No. 1:11-cr-255-3TWT, 2013 WL 2548969, at *19 (N.D. Ga. June 10, 2013).

In *Thompson*, the Eleventh Circuit affirmed a lower court finding without a hearing of no standing and noted that "[t]he only fact Thompson alleged in his motion to suppress relating to standing was that the 'government contends [room 241] to be a room rented by or to the defendant.'"

171 Fed. App'x at 828  Citing *Cooper* at 1284, the Court held such allegations were insufficient to establish standing.  *Id.*[9]

Defendants here have asserted no claim to or interest in the cell phones at issue.  The cell phones were not registered in Defendants' names, and Defendants presented no evidence regarding their possession, use, or control of the phones.  Instead, Defendants rely solely upon loose allegations in the pen/trap applications submitted by the Government, which suggested a link between the cell phones and Defendants in conclusory, unsupported fashion.  In the circumstances and in the absence of contrary case law, I am obliged to conclude that they fail to establish standing to contest the searches at issue and the motions to suppress should be denied.

On this conclusion, I find it unnecessary to discuss in detail the Government's alternative argument made at hearing that the *Leon* good-faith exception would apply in these circumstances.[10] That is, the Government argues that despite the lack of warrant or showing of probable cause, the

---

[9]The Government noted at the hearing that fictitious names or words were registered as the subscribers to these cell phones.  In such circumstances, "[c]ourts have determined that an individual does not have a legitimate expectation of privacy in items that are not in the individual's name or when an individual uses an alias or fictitious name *and there is no other evidence linking the defendant to the item or property.*"  United States v. Suarez-Blanca, No. CR 1:07-cr-0023MHS/AJB, 2008 WL 4200156, at *6 (N.D. Ga. Apr. 21, 2008) (emphasis added) (citing *United States v. Daniel*, 982 F.2d 146, 149 (5th Cir. 1993); *United States v. Lewis*, 738 F.2d 916, 919-20 n.2 (8th Cir. 1984); and *United States v. Bruce*, 396 F.3d 697, 709 n.7, vacated on other grounds 405 F.3d 1034 (6th Cir. 2005)).

[10]*See United States v. Leon*, 468 U.S. 897, 926 (1984).

officers here acted in good faith upon orders issued by the state court such that the *Leon* good-faith exception applies.[11]

### III.

Accordingly, for the reasons stated above, I **RECOMMEND** that Defendant Napoleon Harris's amended motion to suppress (Doc. 980), and as joined and adopted by Defendants Deonte Jamal Martin and Jerry W. Green, Jr. (Docs. 991, 992), be **DENIED.**

I further **RECOMMEND** that Defendant Napoleon Harris's Second Amended Motion to Suppress Evidence (Doc. 1012) be denied for the same reasons.

Respectfully submitted on
this 25th day of July 2016.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

### **NOTICE TO PARTIES OF EXPEDITED OBJECTION PERIOD**

Failure to file written objections to the proposed findings and recommendations contained in this report within **two** days (or as otherwise directed by the district judge) from the date of its

---

[11]The good-faith argument was not addressed in the written submissions by any of the parties, but was raised for the first time at hearing. In response, Defendants argued that the officers knew full well that tracking devices required a warrant and they acted with intentional bad faith by using the pen/trap applications as a vehicle for court approval for conducting illegal searches. I find it entirely unnecessary to reach this dispute given the failure of the Defendants to establish their standing to contest these searches.

service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).

Copies furnished to:
The Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of record